## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASTRAZENECA PHARMACEUTICALS LP,<br>ASTRAZENECA UK LIMITED,<br>IPR PHARMACEUTICALS, INC., and<br>SHIONOGI SEIYAKU KABUSHIKI KAISHA,<br><br>     *Plaintiffs,*<br><br>     v.<br><br>AUROBINDO PHARMA LIMITED, and<br>AUROBINDO PHARMA USA, INC.,<br><br>     *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     C.A. No. 07-810-JJF-LPS<br><br>    REDACTED PUBLIC<br>    VERISON |

## OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICITON AND NONJOINDER

February 15, 2008

OF COUNSEL:

MICHAEL BEST & FRIEDRICH LLP
Thomas P. Heneghan, Esquire
Jeffrey S. Ward, Esquire
Edward J. Pardon, Esquire
One South Pinckney Street, Suite 700
Madison, WI 53703
(608) 257-3501

BAYARD, P.A.

Richard D. Kirk (rk0922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
rkirk@bayardfirm.com
(302) 655-5000
Counsel for Defendants,
AUROBINDO PHARMA LTD.,
AUROBINDO PHARMA USA, INC.

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................... iii

I.    INTRODUCTION ......................................................................................... 1

II.   SUMMARY OF ARGUMENT ....................................................................... 1

III.  BACKGROUND ........................................................................................... 2

    A.    Statutory Scheme ................................................................................... 2

    B.    The Parties and the Genesis of This Suit ............................................. 5

IV.   ARGUMENT ................................................................................................ 8

    A.    Standard ................................................................................................ 8

    B.    Delaware's Long-Arm Statute Does Not Provide Personal
    Jurisdiction over Aurobindo India ......................................................... 9

        1.    The Delaware Long-Arm Statute Does Not Reach
        Aurobindo India When Considered Alone ................................. 10

            a.    There is no jurisdiction under (c)(4) over Aurobindo
            India Alone................................................................... 11

            b.    There is no jurisdiction under (c)(1) over Aurobindo
            India Alone................................................................... 11

            c.    There is no jurisdiction under (c)(3) over Aurobindo
            India Alone................................................................... 12

        2.    The Delaware Long-Arm Statute Does Not Reach
        Aurobindo India When Considered in Conjunction with
        Aurobindo USA ......................................................................... 13

            a.    Aurobindo USA is not the alter ego or agent of
            Aurobindo India ........................................................... 13

            b.    There is no general jurisdiction under (c)(4) over
            Aurobindo India when considered with Aurobindo
            USA................................................................................ 16

            c.    There is no specific jurisdiction under (c)(1) over
             Aurobindo India when considered with Aurobindo
            USA................................................................................ 17

            d.    There is no specific jurisdiction under (c)(3) over
             Aurobindo India when considered with Aurobindo
            USA................................................................................ 17

{00733295;v1}                                    -i-

**TABLE OF CONTENTS**
(continued)

Page

    C.    Haling Aurobindo India into Court in Delaware Would Offend the
Due Process Clause.................................................................................. 19

    D.    This Case Cannot Proceed Against Aurobindo USA without
Jurisdiction over Aurobindo India Pursuant to Rule 19........................... 21

V.    CONCLUSION................................................................................................... 23

## TABLE OF AUTHORITIES

**Federal Cases**

*Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995) .............................................. 22

*Allergan, Inc., v. Alcon Labs., Inc.*, 324 F.3d 1322 (Fed. Cir. 2003) .................... 5, 13, 14

*Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458 (D. Del. 1991)....... passim

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) ...... 10, 21

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)............................................. 13, 23

*C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556 (D. Del. 1998) ............... 9, 10, 15, 18

*Cypress Pharm., Inc., v. Tiber Labs., LLC.*, 504 F.Supp.2d 129, 134 (S.D. Miss. 2007) 14, 20

*Dainippon Screen Mfg., Co. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998)................. 24

*Eli Lilly and Co. v. Medtronic, Inc.*, 496 U.S. 661, 676 (1990) ............................... 3, 5, 13

*Energy Transp. Group, Inc. v. William Demant Holding A/S*, No. 05-422, 2008 WL 78748  (D. Del. Jan. 4, 2008)........................................................... 9, 10, 13

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ............... 12, 22

*In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991).................................................... 2

*International Shoe Co. v. Washington*, 326 U.S. 310 (1947) ..................................... 22, 23

*Merck & Co., Inv. v. Barr Labs., Inc*, 179 F.Supp.2d 368 (D. Del. 2002) ..... 14, 19, 20, 22

*Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260 (D.Del.1989) ..................... 16, 18

*Monsanto Co. v. Syngenta Sees, Inc.*, No. 04-305, 2006 U.S. Dist. LEXIS 54534 (D. Del. Aug. 4, 2006) ..................................................................... 12, 17, 19

*Mylan Laboratories, Inc. v. Thompson*, 389 F.3d 1272 (D.C. Cir. 2004) ......................... 6

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148, 1355, 1358 n. (Fed. Cir. 1998) ................................................................................... 22

*Schulman v. J.P. Morgan Investment Mgmt., Inc.*, 35 F.3d 799, 805 (3d Cir. 1994) ....... 24

*Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297 (D. Del. 1990)........................ 9, 17

*Tuna Processors, Inc. v. Anova Food, Inc.*, No. 07-6192, 2007 WL 3232609, *4 (D. Ore. Nov. 1, 2007) .............................................................................. 15

*Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1358 (Fed. Cir. 2003)................... 2

**Federal Statutes**

21 U.S.C. § 355(b) .......................................................................... 7

21 U.S.C. § 355(c) .......................................................................... 7

21 U.S.C. § 355(j)........................................................................ 8, 12

35 U.S.C. § 271(e) ............................................................................... 9

Pub. L. No. 98-417 ............................................................................. 6

**State Statutes**

10 Del. C. § 3104(c) ......................................................................... 14

**Federal Rules**

Fed. R. Civ. P. 19 ..................................................................... 25, 26

Fed. R. Civ. P. 4(e) ........................................................................ 13

**Federal Regulations**

21 C.F.R. § 314.50(a) ........................................................................ 8

21 C.F.R. § 314.53(e) ........................................................................ 7

21 C.F.R. § 314.94 ............................................................................ 7

21 C.F.R. § 314.95 ............................................................................ 8

**Other Authorities**

4 James W. Moore et al., *Moore's Federal Practice* §19.02[2][d]  (3rd ed. 2007).......... 26

# I. <u>INTRODUCTION</u>

Plaintiffs filed identical patent infringement suits in this Court and in the District of New Jersey on December 11, 2007, and on December 18, 2007, respectively, after Aurobindo Pharma Limited ("Aurobindo India") submitted an Abbreviated New Drug Application ("ANDA") with the United States Food and Drug Administration ("FDA") seeking permission to sell generic rosuvastatin calcium in the United States. Aurobindo India, however, has no contacts with the State of Delaware and did not commit any of allegedly infringing actions in Delaware. In other words, the Court does not have personal jurisdiction over Aurobindo India and should dismiss it from the case. In addition, this Court should also dismiss Plaintiffs' case against Aurobindo Pharma USA, Inc. ("Aurobindo USA") under Rule 19 because Aurobindo India is a necessary and indispensable party to this action and cannot be joined.[1] Therefore, Defendants respectfully request the Court to dismiss this action with prejudice pursuant to Rules 12(b)(2) and (7).

# II. <u>SUMMARY OF ARGUMENT</u>

The Court does not have personal jurisdiction over Aurobindo India because:

1. There is no personal jurisdiction over Aurobindo India under Delaware's long-arm statute or the Constitution's Due Process Clause for at least three reasons:

   a. Aurobindo India has no general or specific contacts with the State of Delaware.

---

[1] Aurobindo USA has concurrently filed a motion to dismiss as to itself on subject matter jurisdiction grounds. If the Court determines that it has personal jurisdiction over Aurobindo India, then Aurobindo India joins in that motion as to Count II.

    b. Aurobindo India is not the alter ego of Aurobindo USA and, therefore, Aurobindo USA's incorporation in Delaware and other specific alleged actions do not create personal jurisdiction over Aurobindo India.

    c. Aurobindo USA is not a mere agent of Aurobindo India and, therefore, Aurobindo USA's incorporation in Delaware and other alleged actions do not give rise to general or specific jurisdiction over Aurobindo India. Moreover, Aurobindo USA's incorporation in Delaware and its alleged specific actions in Delaware do not have any nexus with this cause of action.

2. This case should be dismissed because Aurobindo India is a necessary and indispensable party that cannot be joined in this action because this Court lacks personal jurisdiction over Aurobindo India.

## III. BACKGROUND

### A.   Statutory Scheme

Count I of Plaintiffs' Complaint arises under the Hatch-Waxman Act.[2] The Hatch-Waxman Act amended the patent and drug laws "to get drugs into the hands of patients at reasonable prices – fast." *In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991). To achieve that end, the Act struck a compromise between the competing interests of brand name and generic drug manufacturers. *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1358 (Fed. Cir. 2003). This particular action is brought by Plaintiffs to prevent generic competition with Crestor,® their brand name for the drug rosuvastatin calcium, which is used for the treatment of hypercholesterolemia.

---

[2] The "Hatch-Waxman Act" is formally known as the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (codified as amended at 21 U.S.C. § 355 and 35 U.S.C. § 271).

Count II of Plaintiffs' Complaint is not an action pursuant to the Hatch-Waxman

Act, but instead seeks declaratory relief under 35 U.S.C. § 271(a) for alleged

infringement that, if it occurs at all, is years away.

A new drug application ("NDA") containing safety and efficacy data must be

filed by anyone seeking to obtain approval from the U.S. Food and Drug Administration

("FDA") to sell a purportedly new drug like Plaintiffs' Crestor. *See* 21 U.S.C. §

355(b)(1). An NDA applicant must also file with the FDA the number and expiration

date of any patent that "claims the drug for which the applicant submitted the application

..." 21 U.S.C. §§ 355(b)(1), (c)(2). The FDA publishes the information in "Approved

Drug Products with Therapeutic Equivalence Evaluations," commonly known as the

"Orange Book." *See* 21 C.F.R. § 314.53(e).

A generic drug company may submit an Abbreviated New Drug Application

("ANDA") for FDA approval to market a generic version of a previously-approved NDA

drug by providing bioequivalence data between its proposed generic drug and the

previously-approved NDA drug instead of the animal and human studies of safety and

effectiveness that accompany a full new drug application. *Eli Lilly and Co. v. Medtronic,

Inc.*, 496 U.S. 661, 676 (1990). The FDA specifies the content and format of the ANDA

application. *See* 21 C.F.R. § 314.94. In particular, the FDA requires that when "the

person signing the application does not reside or have a place of business within the

United States, the application is required to contain the name and address of, and be

countersigned by, an attorney, agent, or other authorized official who resides or maintains

a place of business within the United States." *See* 21 C.F.R. § 314.94(a)(1)

(incorporating the requirements of 21 C.F.R. § 314.50(a)(5)).

In addition, the ANDA applicant must also submit one of four "certifications" for each patent listed in the Orange Book. 21 U.S.C. § 355(j)(2)(A)(vii). If the ANDA applicant seeks to obtain approval to market the generic drug before expiration of a patent listed in the Orange Book, the ANDA applicant must submit a "Paragraph IV Certification" stating that the "patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted." 21 U.S.C. § 355(j)(2)(A)(vii)(IV). Once the FDA notifies the ANDA applicant that the application has been deemed acceptable to file, the ANDA applicant must give notice to the patentee and the NDA holder that it submitted an ANDA application containing a Paragraph IV Certification ("the Paragraph IV Certification Notice Letter" or "Notice Letter"). 21 U.S.C. § 355(j)(2)(B)(ii). The FDA specifies the content and format of the Paragraph IV Certification Notice Letter. *See* 21 C.F.R. § 314.95. In particular, the FDA requires that the Notice Letter include "the name and address of an agent in the United States authorized to accept service of process for the applicant [if the applicant does not reside or have a place of business in the United States.]" *See* 21 C.F.R. § 314.95(c)(7).

Thereafter, the recipients of the Notice Letter have 45 days from the date they receive it to file a lawsuit for patent infringement under 35 U.S.C. § 271(e)(2) in order to trigger a 30-month stay that precludes the FDA from immediately approving the ANDA application. 21 U.S.C. § 355(j)(5)(B). Section 271(e)(2) provides in pertinent part:

> It shall be an act of infringement to submit ... an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act [21 U.S.C. § 355(j)] for a drug claimed in a patent or the use of which is claimed in a patent, or if the purpose of such submission is to obtain approval under such Act to engage in the commercial manufacture, use, or sale of a drug ... claimed in a patent ... before the expiration of such patent.

This statutory act of infringement was created by Congress to achieve the competitive interests advanced by the Hatch-Waxman Act -- it is a "highly artificial" act of infringement that vests the district courts with subject matter jurisdiction under 28 U.S.C. § 1338(a) where no jurisdiction would otherwise exist because no actual infringement has occurred. *Allergan, Inc., v. Alcon Labs., Inc.,* 324 F.3d 1322, 1330 (Fed. Cir. 2003); *see also Eli Lilly*, 496 U.S. at 677-78.

Section 271(e)(2) creates a single act of infringement – the submission of the ANDA containing a Paragraph IV Certification – which is an act performed solely by the ANDA applicant. The remedies available to the patentee in response to this statutory infringement include an order that the effective date of any approval of the generic drug shall be no earlier than the expiration date of the patent that has been infringed and an injunction against the ANDA applicant to prevent the commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug. 35 U.S.C. § 271(e)(4). These are the only remedies (with the exception of attorneys fees under § 285) which may be granted by a court for an act of infringement described in § 271(e)(2). *Mylan Laboratories, Inc. v. Thompson,* 389 F.3d 1272, 1276-77 (D.C. Cir. 2004).

**B.**    **The Parties and the Genesis of This Suit**

Aurobindo India is a pharmaceutical company organized under the laws of and based in the Republic of India. (Declaration of Dr. S. Padmaja, filed contemporaneously, ¶ 2, hereafter "Padmaja Decl. ¶__".)

REDACTED

Aurobindo India    REDACTED    is

not registered to do business in Delaware. (Padmaja Decl., ¶3.)

REDACTED

REDACTED

Aurobindo USA is physically located Dayton, New Jersey

REDACTED

REDACTED

Plaintiff IPR Pharmaceuticals, Inc. ("IPR") is asserted to be the holder of an

approved New Drug Application ("NDA") for Crestor® Tablets, in 5 mg, 10 mg, 20 mg,

and 40 mg dosage forms, containing rosuvastatin calcium. Plaintiff AstraZeneca

Pharmaceuticals LP ("AstraZeneca") is asserted to be IPR's authorized agent for matters

related to this NDA.  (D.I. 1 at p. 3 ¶8.)  IPR has listed U.S. Patents in the Orange Book, among them U.S. Patent No. RE 37,314.

Under the Hatch-Waxman Act, no ANDA could be filed on a generic rosuvastatin calcium formulation until August 12, 2007.

REDACTED

REDACTED

Further, since Plaintiffs filed this action within 45 days of receipt of Aurobindo India's Notification Letter, the FDA cannot approve Aurobindo India's ANDA No. 79-170 for thirty months from the date Plaintiffs

received that Notification Letter unless a court declares the patent invalid or unenforceable. 21 U.S.C. § 355(j)(5)(B).

Plaintiffs filed this suit on December 11, 2007. Count I is a § 271(e)(2) action under the Hatch-Waxman Act against Aurobindo India and Aurobindo USA for allegedly filing the ANDA in question. (D.I. 1 at ¶¶ 20-24.) Count II is a declaratory judgment action against both defendants under § 271(a) on the grounds that the defendants have "made substantial preparations" to sell rosuvastatin and that after FDA approval they will "directly infringe, induce and/or contribute to the infringement" of the '314 patent. (D.I. 1 at ¶¶ 26-29.)

Plaintiffs also filed an identical two-count complaint in the United States District Court for the District of New Jersey, Trenton Division, captioned *AstraZeneca Pharmaceuticals, LP et al. v. Aurobindo Pharma Limited,* Civil Action No. 07-CV-6020-MLC-JJH. Aurobindo India is not contesting that court's exercise of personal jurisdiction because Aurobindo India does maintain an office in New Jersey. (Padmaja Decl., ¶ 9.)

## IV. ARGUMENT

### A.    Standard

Plaintiffs bear the burden of establishing personal jurisdiction over Aurobindo India, although Plaintiffs' complaint allegations are taken as true. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 558-59 (D. Del. 1998); *Energy Transp. Group, Inc. v. William Demant Holding A/S*, No. 05-422, 2008 WL 78748, *2 (D. Del. Jan. 4, 2008). Nevertheless, when the parties conduct jurisdictional discovery, "the Court need not be blind to the discovered materials, and should look beyond the façade of the pleadings." *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1462 (D. Del. 1991)

(quoting *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1301 (D. Del. 1990)). To meet their burden, Plaintiffs must establish facts which "establish with reasonable particularity" that jurisdiction exists. *C.R. Bard*, 997 F. Supp. at 558-59.

The analysis for personal jurisdiction is a two-step process. First, Plaintiffs must demonstrate that there is jurisdiction over Aurobindo India pursuant to the applicable service of process statute. *C.R. Bard*, 997 F. Supp. at 558-59; *Energy Transp. Group*, 2008 WL at *2. There is no service provision in the Patent Act, so the Court must analyze service pursuant to the long-arm statute of the state in which that court sits. *See* Fed. R. Civ. P. 4(e); *Applied Biosystems*, 772 F. Supp. at 1462. Second, even if statutory jurisdiction exists, Plaintiffs must demonstrate that exercising personal jurisdiction is consistent with the Constitution's Due Process Clause. *Id.* In addition, the Court conducts this analysis separately for each count in Plaintiffs' complaint. *See Sears*, 744 F. Supp. at 1307.

Jurisdictional analyses are also framed in terms of "general" and "specific" jurisdiction. In general jurisdiction the defendant's contacts have no necessary relationship to the cause of action, whereas in specific jurisdiction the cause of action arises out of or relates to the defendant's contacts with the forum. *Applied Biosystems*, 772 F. Supp. at 1466. Finally, Federal Circuit precedent governs personal jurisdiction in patent cases. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir. 1994).

**B.** **Delaware's Long-Arm Statute Does Not Provide Personal Jurisdiction over Aurobindo India**

Delaware's long-arm statute is codified at 10 Del. C. § 3104(c) and allows service under six specific conditions:

(c)    As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or personal representative, who in person or through a agent:

    (1)    transacts any business or performs any character of work or service in the State;

    (2)    contracts to supply services or things in this State;

    (3)    causes tortuous injury in the State by an act or omission in the State;

    (4)    causes tortuous injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

    (5)    has an interest in, uses or possess real property in the State; or

    (6)    contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Whether considering Aurobindo India alone or considering its alleged actions in concert with Aurobindo USA, this Court does not have jurisdiction over Aurobindo India under any provision of Delaware's long-arm statute.

**1.    The Delaware Long-Arm Statute Does Not Reach Aurobindo India When Considered Alone**

To begin, several of the provisions of Delaware's long-arm statute are clearly inapplicable and warrant little or no discussion.[3]  Jurisdiction cannot be based on any of these provisions.

REDACTED

a.    There is no jurisdiction under (c)(4) over Aurobindo India Alone

Subsection 3104(c)(4) provides for the general jurisdiction allowed under the due

process clause when a party has systematic and continuous contacts with the forum state.

*Applied Biosystems*, 772 F. Supp. at 1466; *see also Monsanto Co. v. Syngenta Sees, Inc.*,

No. 04-305, 2006 U.S. Dist. LEXIS 54534 (D. Del. Aug. 4, 2006); *Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).  Jurisdiction exists if

the defendant "regularly does or solicits business, engages in any other persistent course

of conduct in the State, or derives substantial revenue from services, or things used or

consumed in the State." *Applied Biosystems*, 772 F. Supp. at 1469.

In this case, Aurobindo India does not have any contacts with Delaware, much

less the systematic and continuous contacts described in subsection (c)(4).

REDACTED

Accordingly, there is no basis to provide for

general jurisdiction over Aurobindo India in Delaware.

b.    There is no jurisdiction under (c)(1) over Aurobindo India Alone

Subsection (c)(1) is a specific jurisdiction statute where the cause of action must

arise out of those contacts.  *See Applied Biosystems*, 772 F. Supp. at 1466; *see also*

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 75 (1985).  In other words, there

must be a nexus between the Plaintiffs' cause of action and the conduct used as the basis

for jurisdiction under each of the following subsections. *Energy Transp. Group*, 2008

WL 78748 at *2.

REDACTED

Therefore,

this case does not arise out of any transactions in Delaware. *See Applied Biosystems*, 772

F. Supp. at 1466 (holding that the cause of action must arise out of transactions connected

to Delaware in order to base jurisdiction under (c)(1)). Count I is based on the "highly artificial" act of filing ANDA No. 79-170 with the FDA. *Allergan*, 324 F.3d at 1330; *Eli Lilly*, 496 U.S. at 677-78. REDACTED Count II is based on the supposed direct or indirect infringement of the '314 patent in Delaware. That charge, however, is prospective and speculative. REDACTED Accordingly, there is no basis to provide for jurisdiction over Aurobindo India in Delaware under subsection (c)(1).

        c.    There is no jurisdiction under (c)(3) over Aurobindo India Alone

Subsection (c)(3) is also a specific jurisdiction statute where the cause of action must arise out of those contacts. *See Applied Biosystems*, 772 F. Supp. at 1466. Section (c)(3) does not apply because Aurobindo-India has not caused any tortious injury in Delaware or committed any tortious acts in Delaware. Again, Count I is based on the "highly artificial" act of filing ANDA No. 79-170 with the FDA. *Allergan*, 324 F.3d at 1330. That filing has nothing to do with Delaware. *See e.g. Merck & Co., Inv. v. Barr Labs., Inc*, 179 F.Supp.2d 368, 372-76 (D. Del. 2002) (rejecting jurisdiction based merely on filing an ANDA). Therefore, the allegedly tortious conduct did not occur in Delaware. In Count II, Plaintiffs' allegations are based on conduct that has not yet occurred, and might never occur, as explained above. Section (c)(3) cannot provide for jurisdiction arising out of tortious acts that might occur in the future. *See, e.g., id.* at 374 (stating that the stream of commerce theory does not apply where there is no allegation that defendant has placed a product that allegedly caused an injury); *see also Cypress Pharm., Inc., v. Tiber Labs., LLC.*, 504 F.Supp.2d 129, 134 (S.D. Miss. 2007) (holding that merely having plans eventually to sell a product in the forum state, or having plans to

place a product in the stream of commerce so that it might at some future time be sold in the forum state does not amount to placing a product in the "stream of commerce" under Mississippi law); *Tuna Processors, Inc. v. Anova Food, Inc.*, No. 07-6192, 2007 WL 3232609, *4 (D. Ore. Nov. 1, 2007) (holding that the plaintiff failed to make a *prima facie* showing of personal jurisdiction based on speculative allegations that the defendant might have distributors in the state).

### 2.    The Delaware Long-Arm Statute Does Not Reach Aurobindo India When Considered in Conjunction with Aurobindo USA

Because Delaware's long-arm statute does not reach Aurobindo India by virtue of the company's direct actions, Plaintiffs allege jurisdiction over Aurobindo India on a variety of grounds involving Aurobindo USA. Specifically, Aurobindo USA is a Delaware corporation and does not contest that this Court has personal jurisdiction over it. Plaintiffs use this fact to attempt to ensnare Aurobindo India on the grounds that Aurobindo USA is its agent or alter ego and/or that the two are acting in concert for the purpose marketing, distributing, and selling "generic" pharmaceutical products in Delaware. (D.I. at ¶¶ 13-14, 15-16.) These theories fail for the reasons discussed below.

Delaware law provides two theories that would allow a court to establish jurisdiction over the parent based upon its jurisdiction over the subsidiary: the "alter ego" theory and the "agency theory." *C.R. Bard*, 997 F. Supp. at 559. Neither of these are present here.

### a.    Aurobindo USA is not the alter ego or agent of Aurobindo India

Under the alter ego theory, a court may attribute the actions of a subsidiary to its parent and ignore corporate boundaries if the court finds that the subsidiary is a mere "alter ego" of the parent. *See Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260,

266 (D.Del.1989). Application of this theory is often referred to as "piercing the corporate veil." *See Applied Biosystems,* 772 F.Supp. at 1463.  In Delaware, to reach a parent corporation under the alter ego theory, the party asserting jurisdiction must establish some fraud, injustice, or inequity in the use of the corporate form. *See Mobil Oil., 718 F.Supp. at 266* (explaining that the alter ego theory may apply where "there is a lack of attention to corporate formalities"); *Applied Biosystems*, 772 F.Supp. at 1463 (stating that courts will ignore corporate boundaries under the alter ego theory where "fraud or inequity is shown").  Here, Plaintiffs have not even alleged – must less established – some fraud, injustice, or inequity in the use of the corporate form. Therefore, Plaintiffs have not made a *prima facie* showing of jurisdiction under the alter ego theory and it cannot serve as the basis for jurisdiction over Aurobindo India under any of the provisions of Delaware's long-arm statute.

Under agency theory, courts may attribute certain actions of the subsidiary to the parent if the parent and the subsidiary have a close relationship such that certain acts of the subsidiary can be attributed to the parent. *See Applied Biosystems*, 772 F.Supp. at 1464 ("Considering the extent of overlap of officers, directors, and personnel, as well as the joint advertising, shared finances, and general intercorporate structure, we agree with [Plaintiff] that in many circumstances [the subsidiary] acts as the agent of [the parents], and consequently a limited agency relationship has been created."); *Sears*, 744 F.Supp. at 1306 n.7 (finding that specific jurisdiction over [the parent] may also be predicated under this limited agency theory.)  In assessing agency, courts look at factors such as overlapping officers and directors, financing methods, division of responsibility for day-to-day management, and the process by which each entity obtains its business – although

no one factor is dispositive.  *Applied Biosystems*, 772 F. Supp. at 1463.  Furthermore, a

parent company is not subject to jurisdiction under an agency theory simply because it

has a Delaware subsidiary even if there were overlapping officers and directors,

employees transferred between the entities, and parental involvement in strategic

decision-making such as capital spending.  *See Monsanto*, 2006 U.S. Dist. LEXIS 54534

at *22 (holding that a parent company was not subject to jurisdiction under an agency

theory simply because it has a Delaware subsidiary, because that subsidiary was not

acting as the parent's "distributor or sales agent").

REDACTED

Simply put, Aurobindo USA is not an agent of Aurobindo

India.

Even if an agency relationship exists, however, then courts will only consider the

parent corporation responsible for the specific jurisdictional acts of its subsidiary.

*Applied Biosystems*, 772 F. Supp. at 1463, 1465.  "Only the precise conduct instigated by

the parent is attributed to the parent."  *C.R. Bard*, 997 F. Supp. at 559.  The court must

avoid the notion that a parent company can be held liable for the subsidiary's obligations

purely on the basis of control.  Instead, there must be a "close connection between the

relationship of the two corporations and the cause of action."  *Id.* (quoting *Mobil Oil

Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 271 (D. Del. 1989)).

Finally, no statute exists which permits Delaware courts to exercise personal

jurisdiction over a nonresident principal based on the mere existence of a limited agency

relationship with a Delaware corporation as agent. *Applied Biosystems*, 772 F. Supp. at

1465. Jurisdiction must be affirmatively grounded in some specific statute or rule. *Id.*

Therefore, even if Aurobindo USA acted as Aurobindo India's limited agent for the

purpose of submitting the ANDA or distributing "generic" drugs, jurisdiction over

Aurobindo India must be present pursuant to some provision of Delaware's long arm

statute. Accordingly, the Court should again look to the Delaware long-arm statute to see

if Aurobindo USA has taken any actions that (i) are directly attributable to Aurobindo

India *and* (ii) form the basis of jurisdiction under the statute.[4]

> b.   There is no general jurisdiction under (c)(4) over Aurobindo India
> when considered with Aurobindo USA

A subsidiary's incorporation is Delaware is insufficient grounds by itself to confer

jurisdiction over its parent by virtue of subsection (c)(4). *Applied Biosystems*, 772 F.

Supp. at 1469; *Monsanto*, 2006 U.S. Dist. LEXIS 54534 at 28-29. Jurisdiction is proper

under (c)(4) only if the person "regularly does or solicits business, engages in any other

persistent course of conduct in the State or derives substantial revenue from services, or

things used or consumed in the State." Aurobindo USA does not meet these criteria.

REDACTED

Therefore, if any products produced by Aurobindo USA reach

Delaware, it is only through the actions of wholesalers and other distributors outside of

the state over which Aurobindo has no control. Likewise, the act of placing goods in the

stream of commerce alone also does not give rise to general jurisdiction. *Merck*, 179 F.

---

[4] As noted earlier, there are no allegations warranting serious consideration of subsections (c)(2),
(c)(5), and (c)(6).

Supp.2d at 373-74 (holding that the general jurisdiction provision of the long-arm statute, (c)(4), does not anticipate that placing a product into the stream of commerce would give rise to jurisdiction); *Monsanto*, 2006 U.S. Dist. LEXIS 54534 at *27.  Accordingly, no general activities of Aurobindo USA in Delaware can be attributed to Aurobindo India under subsection (c)(4).

      c.     <u>There is no specific jurisdiction under (c)(1) over Aurobindo India<br>when considered with Aurobindo USA</u>

      As explained earlier, neither of the specific Counts alleged against Aurobindo India confer specific jurisdiction under subsection (c)(1), and the same applies to Aurobindo USA.  Neither the artificial act of infringement under § 271(e)(2) (Count I) nor the alleged future infringement of the '314 patent (Count II) amounts to the specific transaction of business in Delaware.



      Accordingly, no specific activities of Aurobindo USA in Delaware can be attributed to Aurobindo India under subsection (c)(1).

      d.     <u>There is no specific jurisdiction under (c)(3) over Aurobindo India<br>when considered with Aurobindo USA</u>

      Subsection (c)(3) does not apply to Aurobindo USA for the same reasons it does not apply to Aurobindo India – Aurobindo USA has not caused any tortious injury in Delaware or committed any tortious acts in Delaware under either of Counts I or II.

With respect to Count II, Plaintiffs' allegations are based on conduct that has not

yet occurred, and might never occur, as explained above. Section (c)(3) cannot provide for jurisdiction arising out of tortious acts that might occur in the future. *See, e.g., Merck*, 179 F.Supp.2d at 374 (stating that the stream of commerce theory does not apply where there is no allegation that defendant has placed a product that allegedly causes an injury); *see also Cypress*, 504 F.Supp.2d at 134 (holding that merely having plans eventually to sell a product in the forum state, or having plans to place a product in the stream of commerce so that it might at some future time be sold in the forum state does not amount to placing a product in the "stream of commerce" under Mississippi law). The Federal Circuit also has explained that the test for specific jurisdiction under the stream of commerce theory is whether the "defendants, acting in consort, placed the accused [product] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan*, 21 F.3d at 1566.

Here, Plaintiffs have alleged that Defendants act in "consort," but Plaintiffs have no evidence supporting that allegation, and that allegation is refuted in evidence supplied by Aurobindo India.    REDACTED    Moreover, to the extent any of Aurobindo USA's current product sales would reach Delaware, they have nothing to do specifically with the present case, and (c)(3) is a form of specific jurisdiction requiring a nexus between the specific contacts and the cause of action. *Applied Biosystems*, 772 F. Supp. at 1466 (holding that the cause of action must arise out of the Delaware contact). Accordingly, no specific activities of Aurobindo USA in

Delaware can be attributed to Aurobindo India under subsection (c)(3).

Based on the foregoing, jurisdiction is not proper over Aurobindo USA under the Delaware long-arm statute, yet alone over Aurobindo India on the grounds it is acting in concert with Aurobindo India.

**C.** **Haling Aurobindo India into Court in Delaware Would Offend the Due Process Clause**

Although Delaware courts construe its long-arm statute to confer jurisdiction to the maximum extent possible under the Due Process Clause, they have not collapsed the jurisdiction analysis into a single Constitutional due process analysis. *Merck*, 179 F. Supp.2d at 372. Service also must be proper under the Constitution's Due Process Clause even if Delaware's long-arm statute provides for service on Defendants. *Merck*, 179 F. Supp.2d at 371.

The Court's due process analysis starts with the Supreme Court's holding that there must be minimum contacts between the defendant and the forum state and maintenance of the suit cannot offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1947); *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995) (holding that the "minimum contacts" standard for evaluating due process in state law and diversity cases under the Fourteenth Amendment also applies in federal question cases where due process is guaranteed by the Fifth Amendment). *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148, 1355, 1358 n. (Fed. Cir. 1998) (questioning whether the Due Process Clause in the Fifth or Fourteenth Amendment applies, but acknowledging that the analysis is the same).

The requisite minimum contacts can exist in two ways as explained in the above-discussion of Delaware's long-arm statute. First, a defendant may have such continuous,

systematic, and substantial contacts with the forum that the forum's courts have general jurisdiction over the defendant. *Helicopteros*, 466 U.S. at 414-16. Second, a defendant can purposefully avail itself of the forum, and that availment gives rise to specific jurisdiction over causes of action arising out of the defendant's purposeful availment. *Burger King*, 471 U.S. at 472-73, 475. Thus, there is a three-part test for determining whether a court has specific jurisdiction over a nonresident defendant. First, the nonresident defendant must do some act purposefully availing itself of jurisdiction in the forum. Second, the plaintiff's claim must arise out of or result from the defendant's conduct. Third, the exercise of jurisdiction must be reasonable. *Id.* at 473-73, 476-77.

There clearly is no general jurisdiction over Aurobindo India under the Due Process Clause. Aurobindo India has no contacts with Delaware, much less systematic and continuous contacts. Moreover, imputing jurisdiction over Aurobindo India because its subsidiary, Aurobindo USA, is a Delaware corporation would not be fair. REDACTED Aurobindo India could not reasonably anticipate being haled into court in Delaware or any other state.

Likewise, there is no specific jurisdiction over Aurobindo India. Again, Aurobindo India simply has no contacts with Delaware, and it certainly has no specific Delaware contacts giving rise to this case. There is no connection between the ANDA and the State of Delaware. Moreover, Defendants are not even selling the accused new drug product in the United States at this time. Thus, basing jurisdiction over events that have not occurred and might never occur is not fair and is offensive to traditional notions of fair play and substantial justice. *International Shoe*, 326 U.S. at 316.

**D.** **This Case Cannot Proceed Against Aurobindo USA without Jurisdiction over Aurobindo India Pursuant to Rule 19**

If this Court dismisses Aurobindo India because it lacks jurisdiction over Aurobindo India, then the Court also should dismiss the entire case under Rules 12(b)(7) and 19 because Aurobindo India is a necessary and indispensable party.

The analysis under Rule 19 is a two-step process. *See Schulman v. J.P. Morgan Investment Mgmt., Inc.*, 35 F.3d 799, 805 (3d Cir. 1994).[5] First, the court must determine if Aurobindo India is a "necessary" party under Rule 19(a). *Id.* Second, the court must decide whether the case can proceed without Aurobindo India under Rule 19(b). *Id.*

Aurobindo India is a necessary party because it has a significant interest in the outcome of this case. *See* Fed. R. Civ. P. 19(a)(2)(i).

REDACTED

Aurobindo India also is a necessary party because this case may subject Aurobindo India to multiple and inconsistent judgments. *See* Fed. R. Civ. P. 19(a)(2)(ii). Plaintiffs filed an identical complaint in federal court in New Jersey seven days after filing this case. Therefore, two different federal courts simultaneously will be deciding critical issues such as claim construction and validity that will affect for Aurobindo India's proposed drug product and Plaintiffs' '314 patent.

---

[5] Whether a party is indispensable under Rule 19(b) is a matter of regional circuit law. *See Dainippon Screen Mfg., Co. v. CFMT, Inc.*, 142 F.3d 1266, 1269 (Fed. Cir. 1998).

Aurobindo also is an indispensable party.[6]  Rule 19(b) provides four factors for determining if a suit should go forward in the absence of a necessary party, but those factors boil down to unfair prejudice.  Here, Aurobindo India will be unfairly prejudiced if this case proceeds without it for three reasons.  First, Aurobindo India could be prejudiced by an adverse judgment entered in a case in which Aurobindo India was absent.  A judgment in favor of Plaintiffs could bar Aurobindo India from selling its new generic drug in the United States.  Similarly, any rulings in this case, such as claim construction, could be used against Aurobindo India in Plaintiffs' identical case against Defendants in New Jersey.  *See* Fed. R. Civ. P. 19(b)(1).  Second, any judgment against Aurobindo USA cannot be shaped to avoid that prejudice to Aurobindo India.  Plaintiffs are seeking to bar Defendants from selling their new drug in the United States.  There is no way to give Plaintiffs the relief they seek without prejudicing Aurobindo India's significant interest in its product.  *See* Fed. R. Civ. P. 19(b)(2).  Third, Plaintiffs have an adequate remedy if the Court dismisses this case for nonjoinder, because Aurobindo India does not contest jurisdiction in New Jersey and Plaintiffs can proceed there.  *See* Fed. R. Civ. P. 19(b)(4).[7]

---

[6] The new version of Rule 19(b) as amended on December 1, 2007, no longer uses the phrase "indispensable" party, without changing the substance of the rule.  4 James W. Moore et al., *Moore's Federal Practice* §19.02[2][d] at 19-15, 19-16 (3rd ed. 2007).
[7] The third factor, described in Rule 19(b)(3), is not applicable here as a judgment rendered in Aurobindo India absence is adequate to protect Plaintiffs' interests.

## V. **CONCLUSION**

For these reasons, Defendants respectfully request that the Court dismiss this case with prejudice.


February 15, 2008

BAYARD, P.A.

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (#0922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
rkirk@bayardfirm.com
(302) 655-5000

OF COUNSEL:

MICHAEL BEST & FRIEDRICH LLP
Thomas P. Heneghan, Esquire
Jeffrey S. Ward, Esquire
Edward J. Pardon, Esquire
One South Pinckney Street, Suite 700
Madison, WI 53703
(608) 257-3501

Counsel for Defendants,
AUROBINDO PHARMA LTD.,
AUROBINDO PHARMA USA, INC.

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 15, 2008, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Mary W. Bourke, Esquire
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19899

The undersigned counsel further certifies that, on February 15, 2008, copies of the foregoing document were sent by email and hand to the above local counsel and by email and first class mail to the following non-registered participant:

Charles Edmund Lipsey, Esquire
York Moody Faulkner, Esquire
Finnegan, Henderson, Farabow, Garrett & Dunner LLP
11955 Freedom Drive, Suite 800
Reston, Virginia  20190

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk