## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ASTRAZENECA PHARMACEUTICALS LP,  )
ASTRAZENECA UK LIMITED,  )
IPR PHARMACEUTICALS, INC., and  )
SHIONOGI SEIYAKU KABUSHIKI KAISHA,  )
                           )
      Plaintiffs,  )
                           )    C.A. No. 07-810-JJF-LPS
    v.  )
                           )
AUROBINDO PHARMA LIMITED, and  )
AUROBINDO PHARMA USA, INC.,  )
                           )
      Defendants.  )

---

## AUROBINDO PHARMA USA, INC.'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT
## FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1)

---

March 31, 2008

OF COUNSEL:

MICHAEL BEST & FRIEDRICH LLP
Jeffrey S. Ward
Thomas P. Heneghan
Edward J. Pardon
One South Pinckney Street
Madison, WI 53701-1806
(608) 257-3501

BAYARD, P.A.

Richard D. Kirk (rk0922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
rkirk@bayardfirm.com
(302) 655-5000
Counsel for Defendants
AUROBINDO PHARMA LTD.,
AUROBINDO PHARMA USA, INC.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

POINT I:   THERE IS NO SUBJECT MATTER JURISDICTION FOR COUNT I
WITH RESPECT TO AUROBINDO USA............................................................. 1

    A.    Aurobindo India Alone Submitted the ANDA ...................................................... 2

    B.    Even if the Agent's Actions Could be Imputed to Aurobindo USA, That
Does Not Mean Aurobindo USA Submitted the ANDA ....................................... 4

    C.    The *Lupin* Cases Require More Than an Individual's Signature to Show
that the U.S. Subsidiary is an ANDA Applicant.................................................... 6

    D.    Asserting Count I Against Aurobindo USA is a Transparent Attempt to
Obtain Personal Jurisdiction Over Aurobindo India in Delaware ......................... 7

    E.    Plaintiffs' Attempt to Obtain a Continuance is Improper...................................... 7

POINT II:  THERE IS NO SUBSTANTIAL CONTROVERSY OF SUFFICIENT
IMMEDIACY AND REALITY TO CREATE SUBJECT MATTER
JURISDICTION FOR COUNT II ............................................................................ 9

    A.    Plaintiffs Admit that Declaratory Judgment Jurisdiction for Their § 271(a)
Claim is Lacking.................................................................................................. 10

    B.    Aurobindo India Did Not "Open the Door" to a § 271(a) Action by Filing
a Counterclaim to Plaintiffs' § 271(e) Action..................................................... 10

    C.    Plaintiffs' Interpretation of the § 271(e)(1) Safe-Harbor Provision
Eviscerates It........................................................................................................ 11

    D.    Plaintiffs' Claims that Their Remedies under Count I May be Inadequate
Prove the Speculative Nature of Their Claims Under Count II ........................... 14

    E.    At a Minimum, the Court Should Decline to Exercise its Discretion to
Hear Count II ....................................................................................................... 15

CONCLUSION................................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Amgen, Inc. v. ITC,*
  No. 2007-1014, 2008 U.S. App. LEXIS 5751 (Fed. Cir. March 19, 2008).....12, 13, 15

*Apotex, Inc. v. Thompson,*
  347 F.3d 1335 (Fed. Cir. 2003)..............................................................................5

*Aventis Pharma Deutschland GMBH v. Lupin Ltd.,*
  403 F. Supp. 2d 484 (E.D. Va. 2005) ...................................................................4, 6

*Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984)..............................................................................................4

*Eli Lilly & Co. v Medtronic, Inc.,*
  496 U.S. 661 (1990).......................................................................................8, 9, 10

*Erbamont Inc. v. Cetus Corp.,*
  720 F. Supp. 387 (D. Del. 1989).........................................................................16

*Glaxo Group Ltd. v. Apotex, Inc.,*
  130 F. Supp. 2d 1006 (N.D. Ill. 2001) ................................................................15

*Glaxo, Inc. v. Novopharm, Ltd.,*
  110 F.3d 1562 (Fed. Cir. 1997)............................................................................12

*Kokkonen v. Guardian Life Insurance Co.,*
  511 U.S. 375 (1994).............................................................................................13

*Merck KGaA v. Integra Lifesciences I, Ltd.,*
  545 U.S. 193 (2005)..............................................................................................12

*Nesbit v. Gears Unlimited, Inc.,*
  347 F.3d 72 (3d Cir. 2003)...............................................................................7, 8

*Steel Co. v. Citizens for a Better Environment,*
  523 U.S. 83 (1998)................................................................................................7

*Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.,*
  482 F.3d 1330 (Fed. Cir. 2007)............................................................................11

*Wyeth v. Lupin Ltd.,*
  505 F. Supp. 2d 303 (D. Md. 2007) ...................................................................4, 6

ii

## STATUTES

21 C.F.R. § 314.3(b) ...................................................................................5

21 C.F.R. § 314.94 .....................................................................................4

21 U.S.C. § 355(j)(5)(C) ...........................................................................11

35 U.S.C. § 271(a) ............................................................................. passim

35 U.S.C. § 271(e)(1)........................................................................11, 12, 15

35 U.S.C. § 271(e)(2) ......................................................................... passim

35 U.S.C. § 271(e)(4)...............................................................................10, 14

35 U.S.C. § 271(e)(5) ................................................................................11

35 U.S.C. § 271(g) ....................................................................................13

28 U.S.C. § 2201(a) ...........................................................................9, 10, 11

28 U.S.C. § 2201(b)..................................................................................11

## INTRODUCTION

Plaintiffs ignore the plain evidence that Aurobindo Pharma Limited ("Aurobindo India") alone submitted the abbreviated new drug application and paragraph IV certification that led to this case. They present no evidence that Aurobindo Pharma USA ("Aurobindo USA") actively participated in preparing or submitting the application, and fail to address the legal arguments presented by Defendants. Instead, Plaintiffs employ misdirection and engage in conjecture about illegal importation of drugs from Canada. Defendants' motion to dismiss should be granted.[1]

## ARGUMENT

**I.    There is No Subject Matter Jurisdiction for Count I with Respect to Aurobindo USA**

Plaintiffs' sole argument in support of subject matter jurisdiction over Count I of the Complaint (D.I. 1), the Hatch-Waxman claim, with respect to Aurobindo USA rests on the signature of an Aurobindo USA employee who fulfilled a ministerial duty required under the law by acting in his individual capacity as an agent for Aurobindo India. That signature does not mean Aurobindo USA submitted the ANDA – nor would it even if Aurobindo USA itself were the agent. The facts remain undisputed that Aurobindo USA had no active participation in the preparation of the ANDA or its submission to the FDA, and Plaintiffs' attempts to delay this case further by seeking additional meaningless discovery should be rejected. The Court should dismiss Count I of the Complaint against Aurobindo USA for lack of subject matter jurisdiction.

---

[1] In the initial brief, Defendants used the terms "Aurobindo India" and "Aurobindo USA" to refer to the individual entities and "Defendants" to refer to both entities collectively in order to more readily distinguish the two entities and improve readability. Plaintiffs used "Aurobindo Pharma" for Aurobindo India, "Aurobindo USA" for Aurobindo USA, and "Aurobindo" to refer to the entities collectively. In this reply Defendants continue to use the original language except when quoting a document directly.

### A.    Aurobindo India Alone Submitted the ANDA

Under the plain language of § 271(e)(2), the entity that "submits" an abbreviated new

drug application ("ANDA") commits the act of infringement:

> (2) It shall be an act of infringement to *submit* -
>
> (A) an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act [i.e., an ANDA] or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent . . .
>
> if the purpose of such submission is to obtain approval under such Act to engage in the commercial manufacture, use, or sale of a drug or veterinary biological product claimed in a patent or the use of which is claimed in a patent before the expiration of such patent.

35 U.S.C. § 271(e)(2) (emphasis added).[2]  Here, the undisputed evidence is that Aurobindo India

– and not Aurobindo USA – submitted the ANDA.  That much was clear enough from

Defendants' initial motion, and it is even more clear from the portions of the ANDA that

Plaintiffs submitted to this Court.  The applicant on the FDA Form 356h is Aurobindo India, not

Aurobindo USA.  (D.I. 30 at Ex. 2.)  The cover letter enclosed with the ANDA states in no

uncertain terms that "*Aurobindo Pharma Limited* [Aurobindo India] here with submits an"

ANDA.  (D.I. 30 at Ex. 2.)  The letter is on Aurobindo India's letterhead, and the letter and Form

356h are signed by Aurobindo India's U.S. agent – for no other reason than that it is required by

law because Aurobindo India is a foreign entity.  Finally, the other substantive portions of the

ANDA produced to Plaintiffs (which Plaintiffs did not submit to the Court) -- including the

paragraph IV certification itself -- similarly demonstrate that the substantive work on the ANDA

---

[2] Aurobindo USA's original brief citing this statute contains an error in that the word "or" is incorrectly included instead of the ellipse.  (D.I. 16 at 4.)  Aurobindo USA apologizes for the error.

was prepared exclusively by Aurobindo India in India. (Pardon 3/31/2008 Decl., Ex. A.)[3] These

facts alone should end the matter.

Notwithstanding this clear evidence, Plaintiffs focus on insignificant details in an attempt

to make it seem that Aurobindo USA had a substantive role where clearly it did not. For

example, Plaintiffs try to highlight the fact that the agent told the FDA that it could contact him

in the United States if it had any questions. This is simply consistent with the purpose of the

regulations -- to permit access to the applicant within the United States. Plaintiffs also state that

Aurobindo India's transmittal letter (D.I. 30 at Ex. 3.) is on "shared stationery," but that is

simply incorrect. The letter is unequivocally on Aurobindo Pharma Limited [Aurobindo India]

letterhead, and the address and phone number on the bottom refer solely to Aurobindo India's

branch office in the United States -- consistent with what Aurobindo India's Dr. Padmaja stated

in her initial declaration (D.I. 19 at ¶ 2), and consistent with the fact that the two entities are

distinct. Plaintiffs further assert that the language in Dr. Padmaja's declaration referring to the

fact that Aurobindo USA "had its employee sign the ANDA," means that he acted under the

direction of Aurobindo USA. This contention is mere semantics. Plaintiffs did not make

reference to the email communication -- produced to them in this litigation -- that demonstrates

that the origin of the ANDA and the instruction to file it came directly from Aurobindo India.

(Ex. B.) The evidence unequivocally shows that Plaintiffs are wrong in their allegation that

Aurobindo USA "filed" or "submitted" the ANDA. The ANDA was submitted by Aurobindo

India and no one else.

---

[3] March 31, 2008 Declaration of Edward J. Pardon in Support of Defendants' Motion to Dismiss
for Lack of Subject Matter Jurisdiction. Subsequent references to "Ex." are to this declaration
unless otherwise specified.

Contrary to Plaintiffs' assertions, the fact that Aurobindo India's U.S. agent was an employee of Aurobindo USA does not mean that Aurobindo USA submitted the ANDA. None of the documents relied upon by Plaintiffs show that Aurobindo USA acted in its corporate capacity to countersign or otherwise authorize the ANDA. To the contrary, all of the documents reference Aurobindo India as the submitter. Even the agent's email address was his personal address, not a corporate address. (D.I. 30 at Ex. 4.) The U.S. agent, not Aurobindo USA, was an individual acting in an individual capacity as required by law.

**B.    Even if the Agent's Actions Could be Imputed to Aurobindo USA, That Does Not Mean Aurobindo USA Submitted the ANDA**

Even if the agent's actions could be imputed to Aurobindo USA, that does not mean Aurobindo USA "submit[ted]" the ANDA as is required to incur liability under the statute. As noted earlier, FDA regulations require a foreign entity to provide the name and address of a U.S. "agent, attorney, or authorized official" who must countersign the application. 21 C.F.R. § 314.94. Tellingly, Plaintiffs do not dispute that the purpose of the agency requirement is primarily to permit service of process. Nor do Plaintiffs dispute that it would be absurd to convert this "agency" requirement into Hatch-Waxman liability, because otherwise a party's attorney who acted as an agent could be dragged into a lawsuit as an infringer under the Hatch-Waxman Act.[4] Nor do Plaintiffs dispute that the FDA's interpretation of the law is entitled to deference under *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837

---

[4] Plaintiffs merely contend that the court in *Wyeth v. Lupin Ltd.*, 505 F. Supp. 2d 303 (D. Md. 2007), considered and rejected this "hypothesized absurdity." (D.I. 30 at 7.) That is not true. In fact, what the *Wyeth* court rejected was the agency argument of *Aventis Pharma Deutschland GMBH v. Lupin Ltd.*, 403 F. Supp. 2d 484 (E.D. Va. 2005), which Plaintiffs rely upon here. *Wyeth*, 505 F. Supp. 2d at 306 ("The Court does not read § 271(e) (2) as broadly as the *Aventis* court, which placed significance on LPI's countersignature as part of its agent-principal relationship with Lupin.") (citing *Aventis*, 403 F. Supp. 2d at 493).

Similarly, signing a cover letter that merely identifies the contents of the ANDA does not mean the agent is the applicant or "submitted" the ANDA.

4

(1984). *See Apotex, Inc. v. Thompson,* 347 F.3d 1335, 1351-52 (Fed. Cir. 2003). Instead, Plaintiffs merely argue that Aurobindo USA must have submitted the ANDA because the definition of "applicant" under 21 C.F.R. § 314.3(b) could include more than one person and therefore Aurobindo USA is also an applicant who submitted the ANDA. Plaintiffs' circular argument is illogical and lacks any supporting evidence.

Plaintiffs also attempt to impute the patent knowledge and bioequivalence information in the ANDA onto Aurobindo USA by arguing that the certification contained in FDA Form 356h requires that the person signing it must have substantive knowledge of the ANDA and is prepared to update the ANDA with new safety and other information as required by the FDA. (D.I. 30 at 8.) According to Plaintiffs' logic, the agent must be a scientific expert on every substantive detail of every portion of the ANDA. Again, that would mean that if an attorney signed the ANDA as an agent of the pharmaceutical company, then the attorney must have substantive knowledge of the ANDA as well as his firm. This absurd result was clearly not contemplated by Congress when it wrote the Hatch-Waxman Act or by the FDA when it drafted implementing regulations.

Citing § 271(e)(2), Plaintiffs also assert that Hatch-Waxman liability is not limited to those who "submit" an ANDA. Plaintiffs' then claim that Aurobindo USA is a proper party because the purpose of the ANDA submission at issue is to permit Aurobindo USA to "sell" rosuvastatin within the United States if the ANDA is approved. (D.I. 30 at 5.) Plaintiffs are flatly wrong. The plain language of the statute makes the act of *submitting* the ANDA the infringing act – not being the beneficiary of such a submission. Plaintiffs seem to be arguing that because Aurobindo USA might benefit from Aurobindo India's submission, Aurobindo USA must have submitted the ANDA as well. Again, Plaintiffs' logic is plainly wrong. As

Defendants noted earlier, the fact that Aurobindo USA "exists to distribute" generic drugs does not implicate the act of infringement specified in § 271(e)(2).

### C. The *Lupin* Cases Require More Than an Individual's Signature to Show that the U.S. Subsidiary is an ANDA Applicant

Plaintiffs argue that this case is indistinguishable from the *Lupin* cases because Aurobindo USA is Aurobindo India's wholly owned subsidiary and markets its pharmaceutical products in the United States. (D.I. 30 at 7.) Plaintiffs again fail to produce any evidence to show that Aurobindo USA played a role similar to the U.S. subsidiary in the *Lupin* cases. For example, in *Aventis Pharma Deutschland GMBH v. Lupin Ltd.*, 403 F. Supp. 2d 484 (E.D. Va. 2005), the court found that the U.S. subsidiary's "own website indicates it does much more than submit ANDA filings on behalf of its parent as it suggests." *Id.* at 493. And in *Wyeth v. Lupin Ltd.*, 505 F. Supp. 2d 303 (D. Md. 2007), the court held that "when a wholly-owned U.S. subsidiary of a foreign corporation exists to distribute foreign-produced generic drugs in the U.S. *and is actively involved in the ANDA process,* the subsidiary also 'submits' an ANDA application." *Id.* at 306-07 (emphasis added). In these cases, therefore, both courts were persuaded that Lupin's U.S. subsidiary played a greater role than just marketing and distributing the approved generics based on facts that are not present in this case. Here, Plaintiffs have produced no evidence to show that Aurobindo USA submitted this ANDA or was *actively involved in the ANDA process.* Even if this Court accepts the legal conclusions in the *Lupin* cases, the facts in this case show only that an individual who also happens to be an employee of Aurobindo USA acted as Aurobindo India's agent in his personal capacity. That is not enough to find that he was actively involved in the ANDA process, let alone that Aurobindo USA was.

### D.    Asserting Count I Against Aurobindo USA is a Transparent Attempt to Obtain Personal Jurisdiction Over Aurobindo India in Delaware

Plaintiffs do not attempt to hide their motives for wanting to drag Aurobindo USA into this case: since personal jurisdiction over Aurobindo USA exists in Delaware, they need its presence to try to establish some sort of corporate "alter ego" relationship for personal jurisdiction purposes so as to "hook" Aurobindo India.  (Ex. C, Plaintiffs' Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction in New Jersey Case No. 07-6020, at 3.)[5]  The fact that Aurobindo USA is not truly a proper or necessary party under the Hatch-Waxman Act is verified by the fact that Plaintiffs offered, in exchange for not challenging jurisdiction in Delaware, to drop from the case the American subsidiaries of the other Delaware foreign defendants whom Plaintiffs were concerned might challenge jurisdiction there.

The law is clear.  "[S]ubject matter jurisdiction *is* lacking if the alleged basis for jurisdiction 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial or frivolous.'"  *Nesbit v. Gears Unlimited, Inc.,* 347 F.3d 72, 80 (3d Cir. 2003) (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998)) (emphasis in the original).  Plaintiffs appear to seek Aurobindo USA's presence in this case solely to establish personal jurisdiction over Aurobindo India.

### E.    Plaintiffs' Attempt to Obtain a Continuance is Improper

Plaintiffs also argue that Aurobindo USA's motion to dismiss Count I is not really based on lack of subject matter jurisdiction, but rather is a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The reason Plaintiffs do so is because they cannot dispute the law that "a court may inquire into the jurisdictional facts without viewing the evidence in a light

---

[5] Plaintiffs also filed an identical suit against Defendants in New Jersey in case this Court rules that it does not have personal jurisdiction over Aurobindo India, and have further asked the Judicial Panel on MultiDistrict Litigation (JPML) to centralize all related cases in Delaware. The court in New Jersey has stayed the litigation there pending action by the JPML.

favorable to either party." *Nesbit*, 347 F.3d at 77.  It is Plaintiffs' responsibility to demonstrate

subject matter jurisdiction at all stages of the litigation, and the "jurisdictional facts" plainly

demonstrate that Plaintiffs' allegations with respect to Aurobindo USA are wrong and that

subject matter jurisdiction doesn't exist.  Consequently, Plaintiffs appear to be seeking delay by

asserting that theirs is not really a motion about subject matter jurisdiction.

Plaintiffs again are wrong.  As explained earlier, the entire rationale for 35 U.S.C. §

271(e)(2) in the first place was to create "a highly artificial act of infringement" to enable the

holder of a drug patent to sue the submitter of an ANDA in order to prompt a judicial resolution

of the patent issue where jurisdiction to do so had previously been lacking.  *Eli Lilly & Co. v*

*Medtronic, Inc.,* 496 U.S. 661, 677-78 (1990).  Discussing the statutory scheme in which an

applicant who submits an ANDA certifies that the product would not infringe a valid patent and

then notifies the patent holder of that certification, the Court in *Eli Lilly* stated:

> This scheme will not work, of course, if the holder of the
> patent pertaining to the pioneer drug is disabled from establishing
> in court that there has been an act of infringement. And that was
> precisely the disability that the new 35 U.S.C. § 271(e)(1) imposed
> with regard to use of his patented invention only for the purpose of
> obtaining premarketing approval. Thus, *an act of infringement had
> to be created for these ANDA and paper NDA proceedings. That is
> what is achieved by § 271(e)(2) -- the creation of a highly artificial
> act of infringement that consists of submitting an ANDA or a paper
> NDA containing the fourth type of certification* that is in error as to
> whether commercial manufacture, use, or sale of the new drug
> (none of which, of course, has actually occurred) violates the
> relevant patent. Not only is the defined act of infringement
> artificial, so are the specified consequences, as set forth in
> subsection (e)(4). Monetary damages are permitted only if there
> has been "commercial manufacture, use, or sale." § 271(e)(4)(C).
> Quite obviously, the purpose of subsections (e)(2) and (e)(4) is to
> enable the judicial adjudication upon which the ANDA and paper
> NDA schemes depend.

496 U.S. at 678 (emphasis added).  The question whether this Court can proceed under §
271(e)(2) with respect to Aurobindo USA is a question that implicates this Court's subject matter
jurisdiction.

In any event, Plaintiffs have no basis to ask for further discovery because they have had
all the discovery they need.  After Aurobindo USA filed its motion to dismiss on January 31,
2008, Plaintiffs did not initially request discovery on this issue.  In the interim, Defendants
agreed to limited discovery for the purpose of enabling Plaintiffs to respond to Aurobindo India's
motion to dismiss for lack of *personal* jurisdiction.  (D.I. 23.)  On February 28 – two working
days before their response to Defendant's identical motion to dismiss for lack of subject matter
jurisdiction was due in the New Jersey action – Plaintiffs for the first time asked for documents
they asserted were relevant.   In the spirit of cooperation, Defendants produced documents the
next day.  These documents included all of the relevant initial portions of Aurobindo India's
ANDA and are clearly sufficient to demonstrate that Aurobindo USA had no substantive role in
the process.  The information produced in discovery shows that Aurobindo USA has not taken
any action that would give rise to an infringement claim against it under Plaintiffs' Count I and
therefore, Aurobindo USA's motion to dismiss Count I against it for lack of subject matter
jurisdiction should be granted.

II.    **There is No Substantial Controversy of Sufficient Immediacy and Reality to Create
       Subject Matter Jurisdiction for Count II**

Plaintiffs seek to include both Defendants in a declaratory judgment action of patent
infringement under § 271(a) and 28 U.S.C. § 2201(a) based on events that Plaintiffs themselves
acknowledge will occur only upon FDA approval of the ANDA and most likely after the Hatch-

Waxman litigation has concluded.[6] Plaintiffs' arguments are unavailing and simply prove that they can obtain all necessary relief through the Hatch-Waxman claims in Count I.

### A. Plaintiffs Admit that Declaratory Judgment Jurisdiction for Their § 271(a) Claim is Lacking

Plaintiffs' contention that there is a substantial controversy of sufficient immediacy and reality to create declaratory judgment jurisdiction for a § 271(a) claim is belied by their own words. In seeking a stay of the parallel action in New Jersey, Plaintiffs themselves wrote that "Defendants do not yet have FDA approval of their ANDA. Therefore, even if this action could be resolved in Defendants favor tomorrow Defendants still could not sell their generic product." (Ex. D, Plaintiffs' Motion To Stay in New Jersey Case No. 07-cv-06020, at 8.) Clearly, Plaintiffs themselves do not believe that Aurobindo India could sell its generic drug in the near future, so it must be true that there is no substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

### B. Aurobindo India Did Not "Open the Door" to a § 271(a) Action by Filing a Counterclaim to Plaintiffs' § 271(e) Action

Plaintiffs argue that Aurobindo India's counterclaim for a declaratory judgment of patent invalidity in New Jersey opens the door for their declaratory judgment action of patent infringement under § 271(a). Plaintiffs ignore the obvious: Aurobindo India's counterclaim is a counterclaim under the Hatch-Waxman Act, i.e., §§ 271(e)(2) and (e)(4) -- not § 271(a). That's precisely what the Supreme Court was talking about when it stated that "the purpose of subsections (e)(2) and (e)(4) is to enable the judicial adjudication upon which the ANDA and paper NDA schemes depend." *Eli Lilly,* 496 U.S. at 678.

---

[6] Subsequent references to "§2201(a)" are to this statute. Although the complaint does not expressly mention § 2201(a), Plaintiffs' claim for declaratory relief for infringement under § 271(a) necessarily implicates § 2201(a).

Plaintiffs further quote *Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.,* 482 F.3d 1330, 1342 (Fed. Cir. 2007), out of context to support their argument. *Teva* involved declaratory judgment jurisdiction under § *271(e)(5),* the "patent certainty" provision of the Hatch-Waxman Act, *not* §§ 271(a) and 2201. Teva had notified Novartis that it had filed a paragraph IV certification with respect to five Novartis Orange Book patents. *Id.* at 1334. Novartis, however, only asserted one of those five patents against Teva in a Hatch-Waxman lawsuit. *Id.* at 1334-35. In return, Teva brought a declaratory judgment action on the four remaining Orange Book patents under 21 U.S.C. § 355(j)(5)(C) and 35 U.S.C. § 271(e)(5) to obtain "patent certainty" -- which is precisely the situation for which those statutory provisions were created. The Federal Circuit's statement that since Novartis had created a controversy under § 271(e)(2) by suing Teva, then Teva could sue under § 271(e)(5), was made in the context of affirming that an Article III controversy existed under this statutory scheme. *See Teva,* 482 F.3d at 1342. As Plaintiffs themselves acknowledge, Defendants "have not invoked the Court's declaratory judgment jurisdiction under § 271(e)(5)." (D.I. 30 at 10 n.4.) The analysis in the *Teva* case has nothing at all to do with a declaratory judgment under § 271(a). In fact, 28 U.S.C. § 2201(b) states: "[f]or *limitations* on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act. (Emphasis added). This provision makes clear that relief under the patent certainty provisions is narrower in scope than relief under §§ 2201(a) and 271(a) and that *Teva* is inapplicable.

### C.    Plaintiffs' Interpretation of the § 271(e)(1) Safe-Harbor Provision Eviscerates It

Section 271(e)(1) unequivocally provides a "safe harbor" for otherwise infringing activities "reasonably related to" the development of an ANDA. Plaintiffs effectively contend that the mere act of filing the ANDA itself establishes jurisdiction under § 271(a) because it

11

proves that Defendants will infringe in the future.  (*See, e.g.*, reference to Defendants' purported "current activity" at D.I. 30 at 12-13; see also D.I. 1 at ¶ 27, which alleges that by filing the ANDA Defendants have made "substantial preparations" to infringe under § 271(a).)  Plaintiffs' argument creates an exception to the safe harbor provision that would swallow the rule.  If there is a safe harbor for otherwise infringing activities associated with filing an ANDA, the act of filing it does not then automatically convert those same pre-filing activities into infringement. See *Merck KGaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193, 207 (2005) (declining "to read the 'reasonable relation' requirement so narrowly as to render § 271(e)(1)'s stated protection of activities leading to FDA approval for all drugs illusory").  Under Plaintiffs' interpretation of the law, however, the safe harbor provisions would be "illusory."

Plaintiffs rely on two cases to assert that "conduct otherwise protected by the safe harbor may support the Court's exercise of declaratory judgment jurisdiction."  Neither case helps Plaintiffs, for several reasons.

First, in *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562 (Fed. Cir. 1997), the plaintiff filed a declaratory judgment action under *§ 271(g)* for infringement of a "method of making" patent.  Patents that cover a method of making a drug are not listed on the Orange Book and § 271(e)(2) "does not provide jurisdiction to hear infringement cases regarding claims directed to methods for making drugs."  *Glaxo*, 110 F.3d at 1570.  Consequently, *Glaxo* has nothing to do with § 271(e)(2) or the associated safe-harbor provision of § 271(e)(1), and Plaintiffs' arguments to the contrary should be rejected.

Second, Plaintiffs rely on *Amgen, Inc. v. ITC*, No. 2007-1014, 2008 U.S. App. LEXIS 5751 (Fed. Cir. March 19, 2008) (Ex.E ), to support their assertion that "conduct otherwise protected by the safe harbor may support the Court's exercise of declaratory judgment

jurisdiction." As Plaintiffs themselves note, *Amgen* involved the jurisdiction of the International Trade Commission, not the federal courts. The Federal Circuit held that the Commission had jurisdiction under § 1337 of the Tariff Act of 1930 to consider a § 271(g) infringement case because the "Commission's assignment is to prevent and remedy unfair acts flowing from infringement." *Id.*, at *23. In particular, the court noted that "'[w]hile the Commission often looks to domestic patent law for guidance in determining what constitutes an unfair method of competition or unfair act, it is clear that [its] jurisdiction is *not limited* to the strict application of analogous laws. The Commission, under the authority granted to it in section 337, may prevent unfair acts in their incipiency.'" *Id.* at *19 (quoting *In re Certain Apparatus for the Continuous Production of Copper Rod*, 214 USPQ 892, 895 (Int'l Tr. Comm'n 1980)) (emphasis added). Unlike the International Trade Commission, "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted). The jurisdictional analysis in *Amgen* is therefore inapplicable to this case.

Finally, it was not disputed in *Amgen* that the infringing activity involved, at the very least, actual importation of the product to conduct marketing studies for purposes of brand recognition and for reasons not related to FDA approval. *Amgen*, 2008 U.S. App. LEXIS, at * 17. This activity is far more than the act of signing the ANDA, which is the only real evidence Plaintiffs put forth in support of their assertion that infringement is imminent.

Congress has only authorized *one* cause of action in connection with the filing of an ANDA containing a paragraph IV certification. *See* 35 U.S.C § 271(e)(2). Plaintiffs can neither show any evidence to establish subject matter jurisdiction under § 271(a) nor point to a single case where a court has found subject matter jurisdiction under § 271(a) under similar

circumstances as this.  Therefore, the Court should grant this motion and dismiss Count II of the Complaint as to both defendants.

### D.    Plaintiffs' Claims that Their Remedies under Count I May be Inadequate Prove the Speculative Nature of Their Claims Under Count II

Under Count I, if Plaintiffs successfully prove infringement under § 271(e)(2) they will be entitled to the remedies available under § 271(e)(4), which include an injunction prohibiting Aurobindo India from manufacturing, using, selling, offering to sell, or importing rosuvastatin in the United States.  Prohibiting Aurobindo India from importing rosuvastatin would suffice to prevent it from providing rosuvastatin to Aurobindo USA for distribution within the United States.  For that reason alone, Aurobindo USA does not need to be in the case.

Knowing this, Plaintiffs proceed to engage in pure speculation which proves why there is no jurisdiction under Count II.  For example, they state that the § 271(e)(4) remedies under Count I would not prohibit Aurobindo USA from illegally importing unapproved rosuvastatin from Canada or other countries, and that § 271(e)(4) could not prohibit Aurobindo USA from being a distributor of the product covered by another generic company's ANDA.  (D.I. 30 at 20.) Plaintiffs, however, have not alleged that Aurobindo USA is conducting any of these activities – nor could they, because no evidence of any such activities exist.  If Aurobindo India had never filed a paragraph IV certification, Plaintiffs could not set foot in this Court to seek a declaratory judgment of infringement solely under § 271(a) against Defendants based on such unsupported conjecture.  Plaintiffs are now arguing, however, that the act of filing an ANDA somehow means

these unrelated things might really happen. Plaintiffs' argument is without any factual basis and it proves just the opposite: they can get all the relief they need from Count I.[7]

### E.     At a Minimum, the Court Should Decline to Exercise its Discretion to Hear Count II

Plaintiffs argue that exercising jurisdiction over Count II will promote judicial economy. (D.I. 30 at 20-21.) Plaintiffs fail to explain how adding a second, redundant claim and an additional unnecessary party promote judicial economy. Plaintiffs' declaratory judgment action under § 271(a) would add unnecessary complexity to the case, waste judicial resources, and undermine the Hatch-Waxman Act.

Plaintiffs further argue that an ANDA applicant loses its § 271(e)(1) immunity if it certifies its intention to market the product before patent expiration. (D.I. 30 at 18.) Plaintiffs, however, do not point to any authority supporting this proposition. In fact, § 271(e)(1) exists until FDA approval is granted, *Amgen*, 2008 U.S. App. LEXIS 5751 at *23-24 ("the projected FDA approval established the Commission's jurisdiction to review and provide remedy to take effect as appropriate after the approval is granted and § 271(e)(1) no longer shelters liability"), as long as the activities are "'reasonably related' to the process of developing information for submission under any federal law regulating the manufacture, use, or distribution of drugs."

---

[7] Plaintiffs also rely on *Glaxo Group Ltd. v. Apotex, Inc.*, 130 F. Supp. 2d 1006 (N.D. Ill. 2001), to argue that declaratory judgment jurisdiction "to enjoin" future infringement was found in the context of a similarly pleaded ANDA dispute. (D.I. 26, Pls.' Resp. Br. at 17.) As noted earlier, the *Glaxo Group* case was not a § 271(e) (2) case.

At a minimum there is no useful purpose to be served by keeping Count II in the case and Plaintiffs cannot articulate any legal basis to do so. Accordingly, the Court should decline to exercise its jurisdiction over Count II of the Complaint.[8]

## CONCLUSION

Defendants respectfully request that the Court dismiss Count I of the Complaint against Aurobindo USA and Count II of the Complaint against both Defendants for lack of subject matter jurisdiction.

March 31, 2008

BAYARD, P.A.

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (#0922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
rkirk@bayardfirm.com
 (302) 655-5000

Counsel for Defendants,
AUROBINDO PHARMA LTD.,
AUROBINDO PHARMA USA, INC.

OF COUNSEL:

MICHAEL BEST & FRIEDRICH LLP
Thomas P. Heneghan, Esquire
Jeffrey S. Ward, Esquire
Edward J. Pardon, Esquire
One South Pinckney Street, Suite 700
Madison, WI  53703
(608) 257-3501

---

[8] Plaintiffs' also rely on *Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387 (D. Del. 1989), to persuade the Court to exercise jurisdiction in this case because it will serve a useful purpose. In *Erbamont*, the court found that an actual controversy existed because a partner of the potential infringer had already imported material that was allegedly manufactured in violation of the plaintiff's patent rights. *Id.* at 392. No such circumstances exist here.

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on March 31, 2008, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Mary W. Bourke, Esquire
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19899

The undersigned counsel further certifies that, on March 31, 2008, copies of the foregoing document were sent by email and hand to the above local counsel and by email and first class mail to the following non-registered participant:

Charles Edmund Lipsey, Esquire
York Moody Faulkner, Esquire
Finnegan, Henderson, Farabow, Garrett & Dunner LLP
11955 Freedom Drive, Suite 800
Reston, Virginia 20190

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk